IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNION TANK CAR COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 05 C 2095 |
| ) | |
| AEROJET-GENERAL CORPORATION ) | |
| and LIBERTY MUTUAL INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Union Tank Car Company (Union) brought an action alleging breach of contract against defendant Aerojet-General Corporation (Aerojet) and seeking a declaratory judgment resolving the obligations of defendants Aerojet and Liberty Mutual Insurance Company (Liberty Mutual) to defend and indemnify Union in a series of state court personal injury actions. Aerojet moves to dismiss under FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief can be granted, or, alternatively, moves to stay the complaint as to Aerojet pending resolution of Union's claim against Liberty Mutual. For the following reasons, Aerojet's motion is granted in part and denied in part.

## BACKGROUND

In 1970, Aerojet purchased Union's Graver Tank & Manufacturing Company division (Graver). Prior to the purchase, Union and Graver maintained primary-level comprehensive general liability insurance through Liberty Mutual.

The acquisition by Aerojet included substantially all assets and liabilities of Union's Graver division, the terms of which were set forth in a September 8, 1970, Agreement for

Purchase and Sale of Assets (Agreement). As a condition of the acquisition, Aerojet agreed to assume certain liabilities and contracts related to Graver's operations. The terms relevant to this case state:

> Buyer further agrees, subject only to the consummation of the sale as aforesaid, to and does hereby assume, idemnify [sic] and save Seller harmless of and from: (b) Any and all claims of any third party pertaining to or incurred in connection with the sale of any product or the performance of any service by Graver prior to the Closing Date (i) which have heretofore been asserted prior to the Effective Date ... which may arise or be asserted in any manner, whether by notice, claim of offset or otherwise by such third party subsequent to the Effective Date, it being further understood, however, that such claims so assumed by Buyer shall not include:
>
>> 1) any claim to the extent that such claim is required to be defended and/or satisfied by Seller's liability insurance carriers under any liability insurance heretofore carried by Seller up to and including the Effective Date.

Beginning in 2001, several former Graver employees filed suit in state court, naming Union and Graver as defendants, alleging bodily injury as a result of inhaling asbestos fibers while working during the 1950s and 1960s.[1]

In 2003 and 2004, Union tendered the Brashear, Flanders and Hill complaints to Aerojet, who agreed to assume the defense as per the Agreement, subject to a reservation of all rights. In 2005, subject to tender of a fourth defense, Aerojet declined the tender, revoked its willingness to defend the prior three claims, and tendered to Union its defense of the Forsythe claim, citing the indemnification provisions of the Agreement.

---

[1] Cases include: Brashear v. Bechtel Corp., et al., No. 03 L 9 (Cir. Ct. Lawrence Cty, Ill.); Flanders v. Bechtel Corp., et al., No. 01 L 12 (Cir. Ct. Lawrence Cty, Ill.); Hill v. ABB Lummus Global, Inc., et al., No. 03 L 13 (Cir. Ct. Lawrence Cty, Ill.); Pittman v. ABB lummus Global, et al., No. 04 L 20 (Cir. Ct. Lawrence Cty, Ill.); Forsythe v. A.W. Chesterton, Inc., et al., No. 04 L 992 (Cir. Ct. Madison Cty, Ill.). The Forsythe claim also named Aerojet as a defendant.

Liberty Mutual, a remaining defendant in this lawsuit, initially accepted responsibility for the defense of the <u>Flanders</u> and <u>Brashear</u> claims, subject to a reservation of rights, but has since denied owing such obligations.

## DISCUSSION

Aerojet argues that Union's declaratory judgment claims are unripe and non-justiciable because Aerojet's obligations under the Agreement cannot be determined prior to the resolution of Union's claims against Liberty Mutual. Although Aerojet requests dismissal under Rule 12(b)(6), the question of ripeness is a question of subject matter jurisdiction, analyzed best under Rule 12(b)(1). Additionally, Aerojet argues that Union's breach of contract claim fails to state a claim upon which relief can be granted. Such an argument will be analyzed under Rule 12(b)(6). We will take each in turn.

### Rule 12(b)(1) Analysis

The court deems Aerojet's arguments that Union's declaratory judgment claims are unripe to be a motion to dismiss for lack of subject matter jurisdiction. Under 12(b)(1), we "must accept the complaint's well-pleaded factual allegations as true and draw reasonable inferences from those allegations in the plaintiff's favor." <u>United Transp. Union v. Gateway Western Ry. Co.</u>, 78 F.3d 1208, 1210 (7th Cir.1996). The court may, however, consider additional evidentiary materials addressed to the jurisdictional question. *Id.* [2]

---

[2] As part of its ripeness argument, Aerojet claims that "the court should base its rulings on the allegations contained in the plaintiff's Complaint, and not Liberty Mutual's Answer or its post-Complaint correspondence regarding coverage issues." (Defs. Reply at 8). In analyzing a motion to dismiss for lack of subject matter jurisdiction, as opposed to a motion to dismiss for failure to state a claim under 12(b)(6), however, evidence outside of the four corners of the complaint may properly be considered. *See* <u>Ramos v. Ashcroft</u>, 2003 WL 22282521, *2 (N.D.Ill. 2003).

Aerojet seeks to dismiss the declaratory judgment claims for both the duty to defend and the duty to indemnify. However, the duties to defend and indemnify are not "wholly congruent even when the duties are stated in the same terms." Scottsdale Ins. Co. v. Subscription Plus, Inc., 299 F.3d 618, 623 (7th Cir.2002). Because the two duties require different analyses under Rule 12(b)(1), they must be addressed separately.

## Duty to Defend

A claim is justiciable under Article III, Section 2 of the United States Constitution, where the controversy is "definite and concrete, touching the legal relations of parties having adverse legal interests." Aetna Life Ins. Co. of Hartford v. Haworth, 300 U.S. 227, 240-41 (1937). Union's claim satisfies this requirement by alleging that Aerojet has a duty to defend against pending state law claims against Union. Because the parties dispute Aerojet's responsibility to defend Union in ongoing state claims, the parties have a live controversy, ripe for declaratory judgment. See Coltec Indus, Inc. v. Zurich American Ins. Co., 2000 WL 1231553 (N.D.Ill. 2000). Generally, a dispute over an insurance carrier's defense obligations is live controversy ripe for adjudication during the pendency of the primary lawsuit, even where there is doubt as to whether the underlying claim is covered by the insurance policy. See, e.g., Lockwood Intern., B.V. v. Volm Bag Co., Inc., 273 F.3d 741, 746 (7th Cir.2001); Buckley v. County DuPage, 1998 WL 832641 (N.D.Ill. 1998).

The parties are presently in dispute over whether Aerojet must assume the obligation of defense in those suits under the terms of the Agreement. Such a dispute satisfies the case or controversy requirement under the Constitution and the Declaratory Judgment Act (28 U.S.C. § 2201). Because this dispute will not be resolved without a declaratory judgment, the case is a live controversy, ripe for declaratory judgment.

Aerojet argues that Union's claims against it are not ripe for review because Liberty Mutual has already agreed to assume the defense of underlying claims (Defs. Mem. Supp. Mot. to Dismiss at 8). In support of this argument, Aerojet relies on <u>Allstate Ins. Co. v. Kenney</u>, 2003 WL 22345683 (E.D.Pa. 2003). That case, however, offers no assistance in the case at hand. In <u>Allstate</u>, the defendant insurance company had begun providing defense assistance to the plaintiff and then filed suit seeking a declaration of non-coverage. The court held that the insured's counterclaim for breach of contract and bad faith was unripe because Allstate had not refused to defend. In comparison, in the case at hand, Aerojet has refused defense assistance to Union, and therefore there is a ripe controversy between the two parties.

Aerojet's argument relies solely on Union's complaint, stating, "Liberty Mutual responded that it would defend Union with respect to the <u>Flanders</u> and <u>Brashear</u> claims subject to a reservation of rights" (Cplt.,¶15). Aerojet concedes, however, that Liberty Mutual's tentative agreement pertained to only two of the five underlying claims, and it has apparently now changed its mind about those two. And, as noted above, the court is not limited to plaintiff's complaint in deciding a 12(b)(1) motion. <u>United Transp. Union v. Gateway Western Ry. Co.</u>, 78 F.3d 1208, 1210 (7th Cir.1996). Therefore, Liberty Mutual's subsequent denial to defend or indemnify Union (Ans.,¶1) becomes relevant to the jurisdictional question. In light of such information it is clear that Union and Aerojet are engaged in a live, ripe controversy over the defense of at least three, if not all five, claims. Therefore, the motion to dismiss based on jurisdiction and ripeness as to the duty to defend is denied.

<u>Duty to Indemnify</u>

Where a claim of duty to defend is deemed ripe for adjudication, the duty to indemnify may not be ripe. Unlike the duty to defend, the Seventh Circuit has held that "decisions about

indemnity should be postponed until the underlying liability has been established." <u>Lear Corp.</u>, 353 F.3d at 583 (7th Cir.2003). *See also* <u>Grinnell Mut. Reinsurance Co. v. Reinke</u>, 43 F.3d 1152, 1154 (7th Cir.1995) ("Illinois treats arguments about the duty to indemnify as unripe until the insured has been held liable."); <u>Harleysville Lake States Ins. Co. v. Boller Constr. Co.</u>, 2005 WL 1323321, *2 (N.D.Ill. 2005). In this case, Union has yet to incur any actual liability in any underlying case.[3]

Although this rule is general, rather than absolute, <u>Bankers Trust Co. v. Old Republic Ins. Co.</u>, 959 F.2d 677, 680 (7th Cir.1992), this case does not present the special circumstances seen in <u>Bankers Trust</u> that would require a break from the general rule. *See* <u>Molex Inc. v. Wyler</u>, 334 F.Supp.2d 1083, 1088 ("Although it may be more convenient for the Court to resolve the duty to defend and duty to indemnify question simultaneously, convenience concerns cannot trump Article III's ripeness requirement"). Therefore, the motion to dismiss, as it pertains to the duty to indemnify, is granted.[4]

---

[3] Union argues that "Aerojet's duty to indemnify is indisputably ripe as to at least two of the claims. Union and Graver were dismissed from the <u>Hill</u> claim in April, and the matter concluded as to them. In <u>Brashear</u> the parties have reached agreement in principle to settle, subject to documentation" (Pl.'s Br. Opp. to Def.'s Mot. Dismiss at 9-10). In <u>Hill</u>, Union was dismissed from the action without incurring liability. Therefore, the indemnity dispute as to <u>Hill</u> is moot. Regarding <u>Brashear</u>, although settlement is pending, until it is final and liability has attached, the indemnity claim remains unripe. See <u>Maryland Ins. Co. v. Attorneys' Liability Assur. Soc., Ltd.</u>, 748 F.Supp. 627, 629 (N.D.Ill. 1990) (Although "[a]ll that remains for the settlement to be final is the collection of the necessary signatures on the various documents and the obtaining of the approval of the various courts that have a say in the matter ... until that really happens the settlement remains a contingency, however probable its accomplishment may now appear. And the *accomplishment* of such a settlement marks the bright line between a declaration of possible *future* rights and duties and a declaration of actual *present* rights and duties--the bright line between tomorrow and today, between nonjusticiability and justiciability in Article III terms.")

[4] The duty to indemnify issue is more than simply an Article III problem, it also requires a general ripeness analysis. In a declaratory judgment action parties are not entitled to judgment. Thus, we should consider the preservation of judicial resources, especially where judgment could turn out to be unnecessary. *See* <u>Lear</u>, 353 F. 3d at 584. Accounting for such prudential concerns further justifies our refusal to immediately decide on the duty to indemnify.

Rule 12(b)(6) Analysis

The duty to indemnify is a question unripe for review. Rule 12(b)(6) analysis will be limited to a discussion of whether Union's complaint states a breach of contract claim regarding Aerojet's duty to defend under the Agreement.

Like Rule 12(b)(1), analysis under 12(b)(6) requires that we accept the complaint's well-pleaded factual allegations as true, including the inferences reasonably drawn from them. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir.1990). The complaint should be dismissed only if the plaintiff "failed to allege any set of facts upon which relief may be granted." *Id. See also* Conley v. Gibson, 355 U.S. 41, 45-46 (1957). In 12(b)(6) analysis, documents attached to a defendant's pleadings cannot be considered without converting the motion to dismiss into a motion for summary judgment, except that "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." Wright v. Associated Ins. Companies Inc., 29 F.3d 1244, 1248 (7th Cir.1994). Because a contract interpretation case generally falls into this exception (Levenstein v. Salafsky, 164 F.3d 345, 347 (7th Cir.1998)), we can consider the Agreement.

When a federal court hears a case based on diversity of citizenship, the "ultimate responsibility of the district courts is to apply the law of the state in which the court sits with respect to substantive matters." Allstate Ins. Co. v. Menards, Inc., 285 F.3d 630, 633 (7th Cir.2002) (*citing* Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)).

In Illinois, a proper and adequate complaint for a breach of contract claim must allege that "(1) a contract existed; (2) Plaintiff sufficiently performed his contractual obligations; (3)

Defendant breached its contractual obligations; and (4) as a result of Defendant's breach Plaintiff suffered damages." Roberts v. Standard Ins.Co., 2004 WL 2367741, *5 (N.D.Ill. 2004). *See also* Martin-Trigona v. Bloomington Fed. Sav. & Loan Ass'n, 428 N.E.2d 1028, 1031 (Ill. App. Ct, 1981). In analyzing a contract, Illinois courts hold that interpretation should go no further than the contract's four corners. Cortez Prods. v. Monterey Peninsula Artists, Inc., 2004 WL 609375 *2 (N.D.Ill. 2004). This requires the court to identify any ambiguous language in the contract, resulting not "from a mere disagreement among the parties over what a particular term means, but rather from the use of language that is reasonably susceptible to more than one meaning." *Id.* Then, if the court finds no ambiguous language, it may interpret the contract for itself to determine its meaning as a matter of law. Bourke v. Dun & Bradstreet Corp., 159 F.3d 1032, 1036–1037 (7th Cir.1998).

The contract language at issue in this case reads, "[Aerojet] does hereby assume, indemnify and save Seller harmless of and from ..." (Agrmt., ¶1.06). Aerojet argues that the language of the contract does not impose any duty to defend because there is no explicit duty to defend (Defs.Mem.Supp.Mot.to Dismiss at 5). Union responds by arguing that the term "assume" must have meaning independent of the words "indemnify and save harmless," and should be interpreted to include the defense of claims (Pls.Br.Opp.to Defs.Mot.to Dismiss at 6). This is a mere disagreement among the parties, and can be resolved by reading and analyzing the contract in its entirety.

Aerojet points to Lear Corp. v. Johnson Elec. Holdings, Ltd., 2003 WL 21254253 (N.D.Ill. 2003), *aff'd* by Lear Corp., 353 F.3d 580 (7th Cir.2003), to support its assertion that "[t]he lack of any explicit contract term imposing a duty to defend upon Aerojet is fatal to Union's declaratory judgment and contract actions" (Defs.Mem. at 2). In Lear, the court held

that the indemnification provision at issue did not include an obligation to defend. Lear Corp, 2003 WL 21254253. A close reading of Lear, however, distinguishes it from this case and thus does not support Aerojet's arguments. First, the indemnification clause in Lear stated, "[Johnson Electric] shall indemnify and hold harmless ...." (*Id.*), omitting the contentious word "assume," and thus shedding no light on its meaning. Second, the relevant holding in Lear was based substantially, if not completely, on language in the agreement explicitly stating that Johnson Electric could "elect" to undertake the defense, undercutting any argument that there was an absolute duty to defend. *Id.*, at *7. There is no such language regarding Aerojet's obligations in the Agreement at issue in this case.

Rather, reading the contract as a whole, specifically paras. 1.06, 1.07, and 7.04, establishes that the term "assume" in para. 1.06 does in fact include a duty to defend. In defining Aerojet's obligations to indemnify Union in para. 1.06, the Agreement reads, "Buyer furthers agrees...to and does hereby assume, indemnify and save Seller harmless ...." In comparison, in para. 1.07, defining Union's obligations to indemnify Aerojet, the language reads, "Seller shall, and does hereby, indemnify and save Buyer ...." In contract law we assume that parties do not insert meaningless words and phrases into contracts. Illinois Cent. R.R. Corp. v. Norfolf & W. Ry. Co., 1995 WL 579317, at *5 (N.D.Ill. 1995); Berkeley Properties, Inc. v. Balcor Pension Investors, II, 592 N.E.2d 63, 69 (Ill. App. Ct.1992). Additionally, we presume that "all provisions were inserted for a purpose, and conflicting provisions will be reconciled if possible so as to give effect to all of the contract's provisions." Butler v. Economy Fire and Cas. Co., 557 N.E.2d 1281, 1286 (Ill. App. Ct. 1990). Therefore, we also assume that parties do not omit meaningful words or phrases, especially where they have been included elsewhere in the contract. Thus, the parties must have meant to treat the

indemnification obligations of Aerojet differently than the indemnifications of Union. A close reading of para. 7.04 sheds light on the difference. It reads, "Buyer [Aerojet] agrees to give written notice to Seller [Union] of any claim or claims brought against Buyer involving...a subject matter which could give rise to liability under the indemnity or warranty provisions given by Seller under other provisions of this Agreement. Buyer shall give such notice...[and] shall (i) afford Seller an opportunity to defend against or settle any such claim ..." Using the Lear analysis, para. 7.04 indicates that Union has the option of defending a claim that might produce liability under para. 1.07, but is not obligated to provide such a defense.[5]

Para. 7.04, however, only applies to Union's indemnification obligations, designated in para. 1.07 as the obligation to "indemnify and save Buyer harmless." There is no parallel notice or election provision regarding Aerojet's indemnification obligation, designated in para. 1.06 as the obligation to "assume, indemnify and save Seller harmless." Therefore, it must follow that the term "assume" in the indemnification agreement includes an additional duty.[6]

Aerojet has failed to show that it is beyond doubt that the plaintiff could prove no set of facts entitling him to relief -- the standard under which a 12(b)(6) motion is measured. Triad Assoc., Inc., v. Chicago Housing Auth., 892 F.2d 583, 586 (7th Cir.1989). Therefore, Aerojet's motion to dismiss the duty to defend claim is denied.

## Stay

In the alternative, Aerojet argues that Union's action against it must be stayed pending resolution of Union's claims against Liberty Mutual. Although we earlier found an actual

---

[5] Such is the case in the Forsythe litigation.

[6] Black's Law Dictionary gives further credence to this view. It defines "assume" as "to take on, become bound as another is bound, or put oneself in place of another as to an obligation or liability." By assuming any and all claims as Union would have, that necessarily requires the assumption of the defense.

controversy regarding Aerojet's duty to defend, satisfaction of the case or controversy requirement does not compel a district court to entertain a declaratory judgment action. Brillhart v. Excess Ins. Co. of America, 316 U.S. 491, 494 (1942). Rather, the Supreme Court has held that "district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." Wilton v. Seven Falls Co., 515 U.S. 277, 282 (1995). To determine whether to entertain a declaratory judgment action, the Seventh Circuit has held that the court may look at five considerations: "(1) whether the judgment would settle the controversy; (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for *res judicata*'; (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach on state jurisdiction, and (5) whether there is an alternative remedy that is better or more effective." NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V., 28 F.3d 572, 579 (7th Cir.1994). In this case, deciding the declaratory judgment action will allow this court to reach judgment as to both Liberty Mutual's and Aerojet's obligations to defend Union. Because Aerojet is contractually obligated to defend any assumed liability that Liberty Mutual is not required to defend or satisfy (Agrmt. ¶1.06(b)(1)), the court can simultaneously clarify the contractual obligations of all three parties.

Aerojet argues that allowing Union's action against it to proceed will expend substantial amounts of time and resources managing unnecessary litigation (Defs.Mem. at 9). That might be true if the court finds that Liberty Mutual is required to defend or satisfy Union on the underlying claims. Conversely, if Liberty Mutual is found to have no such requirement, allowing Union to proceed against both parties simultaneously will save the court from time-consuming and repetitive litigation that would surely occur if the court grants Aerojet a stay.

Determining Aerojet's obligations under the Agreement will in no way affect the underlying state proceedings against Union, and therefore will not encroach on state jurisdiction. And finally, we do not believe either that the declaratory remedy is being used for procedural fencing or that there is a more effective alternate remedy.

By arguing that a conflict must be resolved before its obligations can be determined, Aerojet essentially argues that the underlying actions against Union are not covered by the Agreement. This argument is no different than any insurance conflict wherein the parties debate whether an underlying claim is an "occurrence" covered by the insurance contract. It is not unusual for a court to face the need to interpret or decide an underlying issue to determine an insurer's liability under the contract. Such an issue, however, is not enough to allow the insurer to remove itself from the litigation pending determination of the underlying issue.

Therefore, Aerojet's motion to stay the proceedings pending the outcome of the conflict between Union and Liberty Mutual is denied.[7]

## CONCLUSION

For the foregoing reasons, Union's claim against Aerojet for indemnification is dismissed without prejudice, and Aerojet's motion for dismissal regarding the duty to defend and in the alternative, a motion for a stay, is denied.

                                                                                *JAMES B. MORAN*
                                                               Senior Judge, U. S. District Court

Sept. 27, 2005.

---

[7] We note that the underlying cases, or at least some of them, rest on activities during Union's ownership and continuing after the 1970 acquisition. If the Liberty Mutual policy covers the alleged injuries during the pre-1970 period, then Liberty has a duty to defend and indemnify respecting that period. We do not assume that Liberty has any obligations arising from Aerojet's activities after the acquisition.